IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


UNITED STATES OF AMERICA                                          PLAINTIFF

V.                                  NO: 4:06CR00276

DARRYL KEITH FOSTER                                               DEFENDANT


## ORDER

Pending is Defendant's motion to suppress. (Docket # 37). Following briefing by the parties, the Court held a hearing on July 30, 2007 which continued on August 8, 2007. From a review of the evidence, which included exhibits and testimony, the Court makes the following findings of fact and conclusions of law:

Defendant is charged with 13 counts of possession of child pornography and one count of transmitting child pornography in interstate commerce. The defendant filed this motion alleging that the consent to search allegedly given by his wife, Stephanie Foster, in two of the searches, was not voluntary and that the search warrant executed in the third search to access the computers is invalid due to a *Franks*' violation. Foster also claims that Stephanie Foster's written statement and his oral and written statements should be suppressed as neither was voluntary nor true.

Defendant asserts that his due process rights under the United States Constitution were violated when police officers elected not to videotape his statements made during his interrogation at the police station. In the alternative, Defendant argues that the officers' failure to tape the conversation by video or audio so seriously impugns their credibility to compel a finding that the government has not met its burden of showing that the statement was voluntary and not

the product of coercion.

The Court has never found the position of various federal law enforcement agencies on tape recording statements to be very reassuring.  Notwithstanding this Court's personal skepticism about the practice, the Eighth Circuit Court of Appeals has ruled that the failure to tape a suspect's interrogation is not a violation of his constitutional rights. *See United States v. Wright*, 2007 WL 1629912 (8th Cir. 2007) and *United States v. Williams*, 429 F. 3d 767, 772 (8th Cir. 2005).

As to Defendant's alternative argument, the Court finds that there was ample corroborative evidence of Keith Foster's admission to downloading child pornography.  It starts with his sworn in court admission that he downloaded child pornography by accident and then erased it.  This was followed by statements to Major Joe Taylor that Foster felt compelled to download pornography on a daily basis.  Foster also made statements to Detective Jim Barrett that he had downloaded illegal images but had erased them.  Finally, there were numerous statements by Stephanie Foster that she had witnessed her husband downloading child pornography.

The Court is aware that both Stephanie Foster and Keith Foster now take the position that all references to pornography were to legal adult pornography and not illegal child pornography.

Of course, the Court had the opportunity to observe all of the witnesses and found the law enforcement officers and agents far more credible than the defendant and his wife.

<u>Search of premises and storage unit</u>

1. The search of the premises occurred on October 18, 2005 in the afternoon.  Police were called by representatives of the women's shelter and came as back up to assist Stephanie

Foster in a domestic abuse case.

2.  Stephanie Foster is 33 years old, married and just short of a college degree, she worked outside the home and was not under the influence of drugs or alcohol at any relevant time.

3.  Stephanie Foster had reported to the women's shelter that for some time she had regularly been emotionally abused by her husband.

4.  Stephanie Foster had also reported to Missa Hatfield with the women's shelter that her husband had a problem with child pornography and she wanted out of the home.

5.  Hatfield was present at the home at the time of Stephanie's initial encounter with the police and she saw no indication of coercion.

6.  Stephanie Foster met Major Joe Taylor outside her home and outside the presence of her husband, Keith Foster.

7.  Taylor did not suspect any criminal activity until Stephanie volunteered to him that Keith had child pornography on his computer.

8.  Stephanie was not under suspicion of any criminal activity and was never placed in custody.

9.  Taylor is fully aware that adult pornography is legal and child pornography is not and would not have investigated a report of adult pornography.

10.  Because of the report of child pornography, Taylor called Detective Jim Barrett who would normally investigate such matters.

11.  When Barrett arrived Stephanie Foster told him that Keith Foster was downloading child pornography on his computers and had been abusive to her.  She appeared to Barrett to be

in need of help.

12. Stephanie Foster also volunteered to Taylor that Keith Foster kept child pornography on CD's in a closet.

13. The CD's were removed from the closet inside the house with Stephanie Foster's cooperation and consent.

14. Stephanie Foster was told she could revoke her consent at any time.

15. Stephanie Foster then wrote out a statement in the presence of Officer Bobby Harvill who testified that she appeared calm.

16. Stephanie admits to the accuracy of everything in her statement except the reference to under age girls which she now says she was told to include in the statement by the officers.

17. Keith Foster told the officers at the house that he had downloaded child pornography by mistake and when he discovered what it was he promptly erased it.

18. Keith Foster gave Barrett consent to take his computer from the house and analyze it.

19. Stephanie Foster told the officers more computers were stored in a rental unit.

20. Stephanie Foster rode in a car with Barrett to the unit. There were only two persons in that vehicle.

21. Stephanie Foster consented to open the storage unit and assisted in locating the computers.

22. This occurred in the presence of her parents and her friends Stephanie and Ben Daub who operated the storage facility.

23. Both the Daubs and her parents testified that Stephanie Foster was upset but that she did not appear to have been coerced by the officers who were completely sympathetic and

4

professional.

26. Stephanie signed property receipts at the storage facility which were witnessed by her mother.

25. Defendant does not contest that Stephanie Foster had standing to give her consent to the searches.

26. The Court finds the testimony of the officers, the Daubs and Stephanie Foster's parents to be credible.

27. Stephanie Foster testified at the hearing that Barrett told her during the drive to the storage unit that she could be charged as an accessory and might lose her kids if she did not cooperate. She was also told that Keith would not go to jail. Stephanie contends that she gave her consent to search the storage unit only on the condition that Keith would not go to jail and Barrett assured her that Keith would not go to jail and would only receive counseling.

28. Stephanie Foster also testified that she was told by the officers to list "under age" on her statement so the officers would have the right to take the computers. She now says that she knew there was pornography on the computers but was not sure if there was child pornography on the computers and further states that she never told the officers she had seen child pornography.

29. Stephanie Foster filed for divorce after Keith was arrested but has now reconciled with him.

30. Stephanie Foster has since lost custody of her children but the Conway Police were not involved in that development.

31. Stephanie Foster spent the night of the search with her parents and never mentioned

that the police had threatened her or promised that Keith would not go to jail.

32.  Barrett testified that he never considered Stephanie Foster as a suspect and never threatened to arrest her or take her children.

33.  The Court does not find the testimony of Stephanie Foster credible

### Statement by Keith Foster on 10/19/05

34.  Keith Foster had told Taylor at his home that he needed help.  Taylor tried to set up a meeting with Barrett.

35.  Barrett asked Keith to come to the police station on the day after the search.

36.  Secret Service Agent Charles Briscoe was at the station on another case and volunteered to sit in on the interview.

37.  Foster was read his *Miranda* rights and signed a form which was witnessed by Briscoe.

38.  Foster was never told that he was under arrest or that he could not leave at any time.

39.  The interrogation room was equipped with video and audio equipment but Foster's interview was not recorded.

40.  The explanation given by the officers as to why the statement was not recorded was that the Conway Police Department only records when a  suspect is illiterate or incapacitated.

41.  Barrett and Briscoe both testified that Foster's statement was entirely in his own words and that his statement was free flowing.

42.  Foster admitted to being obsessive/compulsive and that he had a compulsion to download child pornography.

43.  During the interview with Barrett and Briscoe, Foster provided his computer

password and Barrett was able to access the web site where child pornography was located.

44. Foster communicated with Barrett several times and agreed to the analysis of his computers.

45. Foster does not use drugs or alcohol.

46. Neither Briscoe nor Barrett made any suggestions to Foster as to what he should put in his written statement and all of the words in the statement were chosen by Foster.

47. Barrett was accompanied by SA Toby Rowe when Foster was arrested on October 27, 2005. Foster made a statement to Rowe that he had downloaded images of child pornography.

48. On the day of Foster's arrest Stephanie Foster was interviewed by SA Briscoe and SA Randy Lachney of ICE. She admitted to them that she had seen child pornography on Foster's computer and reaffirmed that she had been verbally and physically abused by Foster.

## Conclusions

1. A search conducted without a warrant is presumptively in violation of the Fourth Amendment.

2. The government has the burden of proving an exception to overcome the presumption.

3. The government contends that the searches were made with the consent of Stephanie Foster and were therefore permissible as an exception.

4. The government has the burden of proving that the consent was voluntary.

5. The government has met its burden of proving by a preponderance of the evidence that consents to search were voluntary and not coerced.

6. The Eighth Circuit Court of Appeals has found that an officer who interviews a

suspect is not required to document his giving of warnings under *Miranda* in written, audiotaped, or videotaped form.  *United States v. Wright*, 2007 WL 1629912 (8th Cir. 2007).

7.  Further, the Eighth Circuit Court of Appeals has specifically declined to fashion a rule mandating the use of tape-recording equipment in formal interrogation settings.  The Court found that there is "no indication that such laws are constitutionally required."  *United States v. Williams*, 429 F. 3d 767, 772 (8th Cir. 2005).

8.  Defendant's constitutional rights were not violated because the police failed to tape record or videotape his statement.

9.  The Court finds the testimony of the officers credible and supported by the testimony of other witnesses and does not find that the lack of a videotape or audio tape sufficient to destroy or cast doubt on their credibility.

10.  The Court finds the consents to search and the oral and written statements were voluntary and not the product of coercion.

Wherefore, Defendant's motion to suppress is denied.

IT IS SO ORDERED this 10th day of August, 2007.

_____
James M. Moody
United States District Judge