IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

UNITED STATES OF AMERICA

V.                                                                    4:06CR00276 JMM

DARRYL KEITH FOSTER

**ORDER**

Petitioner Darryl Keith Foster was charged in a fourteen-count indictment with receiving and possessing child pornography. A jury trial began on September 15, 2008 which ended with a judgment of acquittal on counts one through seven and a mistrial as to counts eight through fourteen. The Government subsequently dismissed counts eight through thirteen. Six months later, the Defendant was tried by a jury and convicted of possession of child pornography, count fourteen. On January 11, 2010, Petitioner was sentenced to 108 months' imprisonment and supervised release for life. Mr. Foster appealed his conviction and the Eighth Circuit Court of Appeals affirmed on October 20, 2010. *See U.S. v. Foster*, 623 F.3d 605 (8th Cir. 2010).

Currently pending before the Court is Petitioner's motion filed pursuant to 28 U.S.C. § 2255 arguing that (1) his counsel was ineffective because he failed to object to inadmissible bad character evidence; (2) the admission of bad character evidence deprived Mr. Foster of due process of law; (3) his conviction was obtained in violation of the Double Jeopardy Clause; (4) his counsel was ineffective for failing to explain the consequences of a mistrial; and (5) his counsel was ineffective for failing to investigate and call witnesses who would have rebutted the bad character evidence and provided a motive for Foster's ex-wife to frame him.

To obtain relief on his ineffective assistance of counsel claim, Petitioner must show both that his counsel's performance fell below an objective standard of reasonableness and that this deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668,

687-88 (1984); *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Petitioner must prove that his attorney's performance was deficient, overcoming the strong presumption that defense counsel's representation fell "within the wide range of reasonable professional assistance." *Id*. at 689. Petitioner must also prove prejudice by demonstrating that absent counsel's errors there is a reasonable probability that the result of the proceeding would have been different. *Id*. at 694.

1. **Counsel Was Ineffective Because He Failed to Object to Inadmissible Bad Character Evidence**

The Petitioner argues that his counsel should have objected to the introduction of testimony of Petitioner's wife (now ex-wife). At trial, Mrs. Foster discussed instances of alleged domestic abuse, allegations that the Petitioner stole Mrs. Foster's prescription medication, that Petitioner's son had a drug problem, and that Petitioner married younger women. The Government responds that Petitioner testified that Mrs. Foster was the collector of the child pornography. In other words, the Fosters each blamed each other for the crime. Therefore, the testimony about the Fosters' marriage was relevant at trial. The Court finds that trial counsel's performance in this area did not fall below the standard of care applicable to defense attorneys.

Even if the Court were to find that Petitioner's counsel erred by failing to object to Mrs. Foster's testimony, the error is harmless. The Government's evidence against Petitioner was overwhelming. Therefore, Petitioner cannot prove that absent counsel's errors there is a reasonable probability that the result of the proceeding would have been different. As the Eighth Circuit stated, "After a very careful reading of the record, we are quite clear that the evidence

that Mr. Foster asserts was erroneously admitted did not affect his substantial rights because the other, admittedly admissible evidence against him was so overwhelming." *U.S. v. Foster,* 623 F.3d 605, 607 (8th Cir. 2010). "[T]he case against Mr. Foster was so overwhelming that we can't think that there is the remotest chance that he would not have been convicted had the evidence that he complains about not been admitted." *Id.*

2. **The Admission of Bad Character Evidence Deprived Mr. Foster of Due Process of Law**

"No due process violation exists for the admission of prior bad acts testimony unless it can be said that the testimony was 'so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [defendant] of fundamental fairness.' To decide this, we must review the totality of the facts in the case and the fairness of the whole trial." *McDaniel v. Lockhart,* 961 F.2d 1358, 1360 (8th Cir. 1992) (quoting Hobbs v. Lockhart, 791 F.2d 125, 128 (8th Cir. 1986)). Reviewing the totality of evidence presented in the case, the Court cannot say the Mrs. Foster's testimony infected the trial and deprived the Petitioner of fundamental fairness.

3. **The Conviction Was Obtained in Violation of the Double Jeopardy Clause and Counsel Was Ineffective for Failing to Explain the Consequences of a Mistrial**

On September 17, 2008, the Government and the Petitioner agreed to ask the Court for a mistrial because new evidence had arisen regarding Petitioner's computer that needed to be examined. Petitioner's counsel stated on the record:

> As I said to the jury in the opening statement, a trial is a series of unanticipated events and this trial proved that statement I guess. Ms. Clevenger and Mr. Gordon found

themselves in a difficult situation last night because they found out about what could be exculpatory information even though the witness had been -- probably was exculpatory. The witness had been debriefed by them several times and the Court has seen the testimony now and heard my proffer yesterday that at one time Mrs. Foster was for us and another time she was firmly in the government's corner and last night, she's giving information that falls somewhere in between that they hadn't gotten from her before.

So they did the right thing by raising this when they did in the way they did. Calling me at eight o'clock or later to tell me that we got this problem, you need to know about it is definitely the right thing to do. I consulted with Mr. Foster last night and I talked to Ms. Clevenger back and forth. I spent at least an hour combined with the two of them and thinking about how to deal with this. Should we take the case as it is and go to the jury, let the government possibly put her on right where we were. For instance, take Mr. Foster off the stand. We thought about -- we talked about it, put her on the stand, let her give evidence for the government essentially in the defense case, or let us call her and try and puzzle it out, but the defendant also has a right not to testify until everybody else does under *Brooks v. Tennessee*.

We were thinking about all the possibilities. Do we want to try this case with the jury we have, are we better off to take a mistrial and see where this evidence sits, how it fits into the case as a whole in light of the change, or just blindly go forward and risk just having it blow up in the witness box. We didn't know. Our duty as trial lawyers is not to rush to conclusion, but to achieve justice, and at this point finally Ms. Clevenger and I and Mr. Foster, after talking to me, decided that it wasn't possible really to go forward. . . .

One shouldn't have to thank somebody for doing their job, but I thank the prosecutors for, in this case, doing the right thing and telling us when they did instead of just keeping it to themselves which would have happened in state court without a doubt. They were very professional in a tough situation. That's not easy to have to come up here and do a request for a mistrial two days into a trial, three days now, but that's the best outcome, I think, for everybody concerned. . . . And I say all this so there won't be a double jeopardy claim, that this was talked to among the parties, we agreed to it and the defense will waive speedy trial.

(Trial Trans., Vol. 3, Sept. 17, 2008, at pp. 350-354).

"Absent prosecutorial misconduct, when a mistrial is declared at the request of a criminal defendant, the Double Jeopardy Clause does not bar a second prosecution." *U.S. v. Standefer,* 948 F.2d 426, 432 (8th Cir. 1991) (citing *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976)). As shown in the trial transcript, Petitioner and his counsel took part in a

4

discussion with the Court and the prosecutors regarding the mistrial decision. Defense counsel requested that the Court declare a mistrial. Petitioner did not object to his counsel's motion. Counsel stated that the Petitioner agreed with the decision to seek a mistrial after discussions the night before. "I consulted with Mr. Foster last night and I talked to Ms. Clevenger back and forth. I spent at least an hour combined with the two of them and thinking about how to deal with this. . . . Ms. Clevenger and I and Mr. Foster, after talking to me, decided that it wasn't possible really to go forward." (Trial Trans., Vol. 3, Sept. 17, 2008, at pp. 350-354). There is no evidence, or allegation, of prosecutorial misconduct which caused the Petitioner to request the mistrial. Therefore, Petitioner's Double Jeopardy argument is without merit.

There is also no evidence that counsel failed to explain the consequences of a mistrial. Even if there were evidence of a failure to explain the consequences, Petitioner has failed to prove prejudice by demonstrating that had his counsel explained the consequences of a mistrial there is a reasonable probability that the result of the proceeding would have been different.

**4. Counsel Was Ineffective for Failing to Investigate and Call Witnesses Who Would Have Rebutted the Bad Character Evidence and Provided a Motive for Foster's Ex-wife to Frame Him**

Petitioner contends that his counsel was ineffective because he did not call witnesses to refute Mrs. Foster's allegations of domestic abuse or witnesses who would have testified that Mrs. Foster had a motive for planting child pornography on Petitioner's computer. Specifically, Petitioner has filed letters from individuals who state they would have testified that they had never seen Petitioner be abusive to his wife and that he did not have a history of abusive relationships. Petitioner also states that he has evidence that Mrs. Foster did not make wise

5

financial decisions and that she had filed for divorce from Petitioner.

"The decision not to call a witness is a virtually unchallengeable decision of trial strategy." *U.S. v. Vazquez-Garcia,* 211 Fed. Appx. 544, 545-46 (8th Cir. 2007)(citing *Bowman v. Gammon*, 85 F.3d 1339, 1345 (8th Cir.1996) (noting that under *Strickland*, "decisions related to trial strategy are virtually unchallengeable"), cert. denied, 520 U.S. 1128, 117 S.Ct. 1273, 137 L.Ed.2d 350 (1997)).  Petitioner basically claims that his counsel employed poor trial strategy. Unsuccessful trial strategy is not enough to show that Petitioner's counsel's performance fell below an objective standard of reasonableness. *Graham v. Dormire,* 212 F.3d 437, 440 (8th Cir. 2000)("Reasonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful.")  Moreover, Petitioner has failed to show a reasonable probability that the result of the trial would have been different if his attorney had called these witnesses to testify at trial that they had never seen Petitioner be abusive to Mrs. Foster, that Mrs. Foster was not financially adept, or that she had filed for divorce.  Absent such a showing, Petitioner's claim of ineffective assistance of counsel fails.

For all of these reasons, the Motion Under 28 U.S.C. § 2255 (Docket # 152) is DENIED.

IT IS SO ORDERED this 24th day of January, 2013.

_____
James M. Moody
United States District Judge